METHODIST CHARLTON MEDICAL CENTER, Methodist Hospitals of Dallas, and Methodist Dallas Medical Center, Appellants,

v.

Felicia STEELE and Russell Steele, Appellees.

No. 05–07–01762–CV.

Court of Appeals of Texas, Dallas.

Aug. 19, 2008.

Rehearing Overruled Jan. 30, 2009.

Robert F. Begert, Joann N. Wilkins, Jennifer A. King, Burford & Ryburn, L.L.P., Dallas, TX, for Appellants.

T. Ernest Freeman, The Freeman Law Firm, PC, Houston, TX, James S. Bromberg, Richmond, TX, G. Kevin Buchanan, Buchanan & Burke, L.L.P., F. Leighton Durham, Kirk L. Pittard, LLP, Durham & Pittard, LLP, Dallas, TX, for Appellees.

Before Justices WRIGHT, BRIDGES, and MAZZANT.

## OPINION

Opinion by Justice WRIGHT.

Methodist Charlton Medical Center (Charlton), Methodist Hospitals of Dallas (MHD), and Methodist Dallas Medical Center (Methodist) bring this interlocutory appeal from the trial court's order denying their motion to dismiss. *See* TEX. CIV. PRAC. & REM.CODE § 51.014(a)(9) (Vernon 2007) (allowing interlocutory appeal from orders denying a motion for dismissal for failing to serve an expert report in a health care liability case). In four issues, appellants generally contend the trial court abused its discretion by denying their motion to dismiss because Felicia and Russell Steele failed to serve an expert report on appellants regarding their claims of negligent hiring, supervision, training, and retention.[1] We agree with appellants, reverse the trial court's order, render judgment dismissing appellees' claims against appellants for negligent hiring, supervision, training, and retention, and remand for further proceedings.

## Background

Appellees filed suit against Charlton, MHD, and Lakisha Taylor, R.N., on September 21, 2006. Appellees alleged Taylor failed to promptly assess, triage, and treat Mrs. Steele in the emergency room resulting in Mrs. Steele having permanent neurologic deficits from a stroke, and that Charlton and MHD were vicariously liable for Taylor's negligence. Appellees timely served expert reports regarding the claims presented in their original petition. Appellees later amended their petition adding Methodist as a party and subsequently served expert reports to Methodist on February 14, 2007. The reports regarding appellees' vicarious liability claims are not

---

1. Specifically, appellants' issues are as follows:

   If a claimant files a health care liability claim and timely serves his report(s) addressing the acts or omissions contained in his original petition, what is the effect when he files an amended petition more than 120 days after the original petition and raises new claims that are not addressed by an expert report(s)?

   When faced with an amended pleading asserting a claim not addressed in any manner by timely filed expert report(s), what is the course of action and remedy for a health care provider?

   Can a claimant avoid the requirements of section 74.351(a) and (r)(6) by filing an amended pleading more than 120 days after suit was initially filed?

   Does the 120 day deadline of section 74.351(a) allow a claimant to file amended pleadings to add claims without the need to serve an expert report addressing the standard of care, breach of the standard and causation for those new claims?

at issue in this appeal. On June 11, 2007 (236 days after filing their original petition), appellees again amended their petition, adding direct claims against appellants for negligent hiring, supervision, training, and retention. Appellees failed to serve expert reports addressing those claims.

Thereafter, appellants filed a motion to dismiss requesting appellees' claims for negligent hiring, supervision, training, and retention be dismissed with prejudice. In their motion, appellants asserted the trial court was required to dismiss those claims because appellees failed to serve expert reports addressing the additional causes of action within 120 days after the original petition was filed. The trial court denied appellants' motion, and this interlocutory appeal ensued.

### Standard of Review

We review a trial court's decision on a motion to dismiss a health care liability claim for an abuse of discretion. *See Jernigan v. Langley,* 195 S.W.3d 91, 93 (Tex.2006) (per curiam); *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 875 (Tex.2001); *Baylor Univ. Med. Ctr. v. Biggs,* 237 S.W.3d 909, 916 (Tex.App.-Dallas 2007, pet. denied). A clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion. *Biggs,* 237 S.W.3d at 916. To the extent resolution of this issue requires interpretation of the statute, we review the ruling under a de novo standard. *See Intracare Hosp. N. v. Campbell,* 222 S.W.3d 790, 794 (Tex.App.-Houston [1st Dist.] 2007, no pet.); *Buck v. Blum,* 130 S.W.3d 285, 290 (Tex.App.-Houston [14th Dist.] 2004, no pet.).

### Discussion

Because resolution of this case requires us to interpret section 74.351 of the Texas Civil Practice and Remedies Code, we begin by reviewing the relevant principles of statutory construction. The primary goal of statutory construction is to ascertain and effectuate the legislature's intent. *Fitzgerald v. Advanced Spine Fixation Sys., Inc.,* 996 S.W.2d 864, 865–66 (Tex. 1999); *Albertson's, Inc. v. Sinclair,* 984 S.W.2d 958, 960 (Tex.1999). In doing so, we begin with the statute's plain language because we assume the legislature said what it meant and, thus, that its words are the surest guide to its intent. *Fitzgerald,* 996 S.W.2d at 865–66. Besides yielding an objective guidepost to the legislature's intent, reliance on statutory text "ensures that ordinary citizens are able to 'rely on the plain language ... to mean what it says.'" *Id.* at 866. Additionally, we may consider, among other things, the circumstances under which the legislature enacted the statute, the legislative history, and the consequences of a particular construction. *See* TEX. GOV'T CODE ANN. § 311.023 (Vernon 2005).

Section 74.351(a) provides that "[i]n a health care liability *claim,* a claimant shall, not later than the 120th day after the date the original petition was filed, serve on each party or the party's attorney one or more expert reports ... for each physician or health care provider against whom a liability claim is asserted." TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a) (Vernon Supp.2008) (emphasis added). A "health care liability claim" is "a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant...." TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(13) (Vernon 2005). If the claimant does not serve such reports

within 120 days, the trial court "shall" enter an order granting the affected party's motion to dismiss the claim. *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.351(b) (Vernon Supp.2008).

■ Here, it is undisputed that appellees' causes of action against appellants for negligent hiring, supervision, training, and retention are health care liability claims filed more than 120 days after appellees' original petition was filed. Likewise, it is undisputed that appellees failed to serve expert reports on appellants with respect to those claims. The plain language of the statute requires appellees to serve an expert report on each physician or health care provider against whom a liability claim is asserted within 120 days of filing their original petition. The plain language of the statute also requires such a report for each health care liability *claim.* Because appellees failed to serve expert reports addressing their claims for negligent hiring, supervision, training, and retention, the trial court was required to dismiss the complained-of claims upon appellants' request. *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.351(b); *Maxwell v. Seifert,* 237 S.W.3d 423, 426 (Tex.App.-Houston [14th Dist.] 2007, pet. denied) (all expert reports, including those relevant to amended claims, must be served within 120 days from date "original petition" was filed); *see also Puls v. Columbia Hosp. at Med. City Dallas,* 92 S.W.3d 613, 617 (Tex.App.-Dallas 2002, pet. denied) (interpreting previous version of statute requiring expert report to be filed within 180 days of when "health care liability claim" was filed, and concluding such report must be filed for each claim and that 180–day period began to accrue from filing date of each claim); *Poland v. Grigore,* 249 S.W.3d 607, 613–14 (Tex. App.-Houston [1st Dist.] 2008, no pet.) (under former version of section 74.351, time period to file expert report for amended claim triggered by first petition to allege claim).

In reaching this conclusion, we necessarily reject appellees' argument that this interpretation is contrary to the intent of the legislature. The purpose behind section 74.351(a)'s adoption was, among other things, to "remove unwarranted delay and expense, to accelerate the disposition of non-meritorious cases, and to give hard-and-fast deadlines for the serving of expert reports." *Campbell,* 222 S.W.3d at 797. The 2003 amendments created a statute-of-limitations-type deadline within which expert reports must be served. *Ogletree v. Matthews,* 262 S.W.3d 316, 320 (Tex. 2007). This strict 120–day deadline can lead to seemingly harsh results. *Id.* Nonetheless, the legislature imposed the deadline as part of its effort to "reduce excessive frequency . . . of health care liability claims." *Id.* (citing Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.11(b)(3), 2003 Tex. Gen. Laws 847, 884).

The purpose behind the 2005 amendment to section 74.351(a), requiring expert reports to be served within 120 days of filing the original petition rather than within 120 days of filing a health care liability claim, was to "clarify" the timing of when an expert report is due. House Comm. on Civ. Prac., Bill Analysis, Tex. H.B. 2645, 79th Leg., R.S. (2005). The legislative intent is that the timing for expert reports "be triggered by the filing of the lawsuit." *Id.* The effect of the 2005 amendment not only clarifies the timing of when an expert report is due, it also necessarily limits the time for a party to add claims without the possibility of dismissal for failing to serve an expert report to 120 days from filing the original petition. Thus, this amendment leads to even harsher results than the 2003 amendments. Nevertheless, the deadline again serves the legislature's effort to "reduce excessive

frequency ... of health care liability claims."

The goals of accelerating the disposition of non-meritorous cases and having hard-and-fast deadlines for service of expert reports, as well as the purpose of requiring service of an expert report at all, would be completely undermined if, as appellees suggest, a party had only to wait more than 120 days after filing their petition, amend the petition adding new claims, and then avoid having to serve an expert report regarding the amended claims. Neither the plain language of section 74.351(a) nor the legislative purpose behind it supports such a reading, and we reject appellees' argument to the contrary.

 Finally, appellees assert appellants' motion to dismiss was not timely and they have waived their right to complain about the expert reports. According to appellees, it is undisputed they filed expert reports within 120 days of filing their original petition. Thus, they argue, when appellants stated in their brief that appellees "added claims" and were required to file expert reports with respect to those claims, appellants raised an "alternative 'deficient report' argument" for the first time on appeal. We disagree.

Appellees' original claims asserted that under the doctrine of respondeat superior, appellants were vicariously liable for Taylor's negligent care of Mrs. Steele in the emergency room at Charlton. In contrast, appellees' claims for negligent hiring, supervision, training, and retention are causes of action complaining of appellants' direct negligence. In their motion to dismiss and in their brief, appellants argue that expert reports are necessary for each separate health care liability claim, and appellees failed to serve expert reports regarding their separate and distinct claims of direct negligence against appellants. This is not a "deficient report" argument, and appellees' suggestion to the contrary lacks merit. Because appellants' complaint in their motion to dismiss was that expert reports were not filed within the statutory deadline, it is not subject to the 21-day deadline for objections to the sufficiency of an expert report. *See Victoria Gardens of Frisco v. Walrath,* 257 S.W.3d 284, 291 (Tex.App.-Dallas 2008, no pet. h.). Thus, we conclude appellants' motion to dismiss was timely.

We reverse the trial court's order denying appellants' motion to dismiss appellees' claims against appellants for negligent hiring, supervision, training, and retention, render judgment dismissing those claims, and remand for this case for further proceedings with respect to appellees' remaining claims.