NUMBER 13-09-00495-CV


COURT OF APPEALS


 

THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


PADRE BEHAVIORAL HEALTH SYSTEM,

LLC, ET AL., Appellants,


v.


LECIA L. CHANEY, ET AL., Appellees.

 
 

On appeal from the 357th District Court

 of Cameron County, Texas.

 


 O P I N I O N


Before Chief Justice Valdez and Justices Garza and Benavides

 Opinion by Chief Justice Valdez

 

 Appellants, Padre Behavioral Health System, LLC; Padre Behavioral Hospital, in its
assumed and common name; Continuum Padre, LLC; Samuel Ganz, D.O.; and James M.
May, M.D., appeal from the trial court's denial of motions to dismiss the lawsuit brought by,
Lecia L. Chaney, individually and as independent executrix of the estate of Stuart A.
Chaney, deceased, and as next friend of Elizabeth Chaney and Elliott Chaney, minors; and
Ernie J. Chaney, M.D., individually. By one issue, appellants argue that the trial court erred
in denying their motions to dismiss because appellees failed to serve on appellants an
expert report within 120 days of filing suit. See Tex. Civ. Prac. & Rem. Code Ann. §
74.351(a) (Vernon Supp. 2009). We affirm.

I. Background

 This appeal arises from the death of Stuart as a result of allegedly negligent care
for Stuart's opioid dependence and the dispensing of excessive prescriptions for treatment
of a painful foot condition. (1)
 Appellees filed their original petition on May 27, 2008,
asserting health care liability claims against Los Ebanos Pharmacy, LLC; Los Ebanos
Pharmacy, in its assumed or common name; Robert J. De La Chica, R. Ph.; Richard J.
Stachowiak, R. Ph.; Price Village Pharmacy, in its assumed or common name; Juan
Humberto Cavazos, R. Ph.; Jesus A. Caquias, M.D.; and Price Village Family Medical
Clinic, Inc. (2) Appellants were not joined as parties to the suit until appellees filed their third
amended petition on January 8, 2009. 

 The crux of this appeal pertains to the timeliness of appellees' service of expert
reports on appellants. The record reflects that appellees served appellants with the expert
reports of Cheryé C. Callegan, M.D., and Paul W. Diabel, M.D., on April 16, 2009. 
Appellants filed numerous objections and motions to dismiss appellees' claims, alleging,
among other things, that appellees did not timely serve the expert reports of Drs. Callegan
and Diabel within the 120-day period provided by law. See id. § 74.351(b). Specifically,
appellants asserted that the 120-day period began to run from the date appellees filed their
original petition, May 27, 2008, not from the date of appellees' third amended petition. See
id. § 74.351(a). Therefore, based on appellants' contention, appellees were required to
serve their expert reports on or about September 24, 2008, a date which preceded
appellants' addition as a party in the case. The trial court denied appellants' objections
and motions to dismiss, and this accelerated interlocutory appeal ensued. See Tex. R.
App. P. 28.1; see also Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(9) (Vernon 2008)
(providing for interlocutory appeal of an order denying all or part of relief sought by a
motion brought under section 74.351(b) of the civil practice and remedies code). 

II. Standard of Review

 We review a trial court's decision to deny a motion to dismiss a health care liability
claim under an abuse of discretion standard. See Jernigan v. Langley, 195 S.W.3d 91, 93
(Tex. 2006); see also Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d 873,
878 (Tex. 2001). A trial court abuses its discretion if it acts in an arbitrary or unreasonable
manner or without reference to any guiding rules or principles. Walker v. Gutierrez, 111
S.W.3d 56, 62 (Tex. 2003); Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238,
241-42 (Tex. 1985). To the extent resolution of this issue requires interpretation of the
statute, we apply a de novo standard of review. See Pallares v. Magic Valley Elec. Coop.,
267 S.W.3d 67, 69-70 (Tex. App.-Corpus Christi 2008, pet. denied) (citing Buck v. Blum,
130 S.W.3d 285, 290 (Tex. App.-Houston [14th Dist.] 2004, no pet.); Ponce v. El Paso
Healthcare Sys., Ltd., 55 S.W.3d 34, 36 (Tex. App.-El Paso 2001, pet. denied)).

III. Analysis

 By their sole issue, appellants argue that appellees did not timely serve their expert
reports with the 120-day period prescribed by section 74.351(a); thus, the trial court
abused its discretion in denying appellants' motions to dismiss. See Tex. Civ. Prac. &
Rem. Code Ann. § 74.351(a). Specifically, appellants argue that the 120-day period began
when appellees filed their original petition, even though appellants were not named as
parties at that time. See id. According to appellees, the 120-day period began to run when
appellants were first named as parties to the suit in appellees' third amended petition filed
on January 8, 2009, and therefore, the appellees' service of their expert reports on April
16, 2009, was well within the 120-day period. See id. 

A. Applicable Law

 1. Statutory Construction

 The legislature has directed that "[i]n interpreting a statute, a court shall diligently
attempt to ascertain legislative intent and shall consider at all times the old law, the evil,
and the remedy." Tex. Gov't Code Ann. § 312.005 (Vernon 2005). Statutes must be
construed as written, and legislative intent determined, if possible, from their express
terms. Simonson v. Keppard, 225 S.W.3d 868, 879 (Tex. App.-Dallas 2007, no pet.)
(citing Helena Chem. Co. v. Wilkins, 47 S.W.3d 486, 493 (Tex. 2001)). Chapter 74, in its
entirety, rather than provisions in isolation, must be considered, and meaning given to each
provision consistent with all others. Id.

 Courts presume that the entire statute is to be effective and a just and reasonable
result is intended. Id. "Even if a statute is unambiguous, courts may consider the statute's
objective; circumstances of its enactment; its legislative history; . . . [and] consequences
of a particular construction . . . ." Univ. of Tex. Health Sci. Ctr. at Houston v. Gutierrez, 237
S.W.3d 869, 873 (Tex. App.-Houston [1st Dist.] 2007, pet. denied) (citing Simonson, 225
S.W.3d at 880). Any words used or omitted are presumed used and omitted purposefully. 
Id. (citing Simonson, 225 S.W.3d at 880; Cameron v. Terrell & Garrett, Inc., 618 S.W.2d
535, 540 (Tex. 1981)). When the legislature enacted chapter 74, it made several findings. 
See Tex. Civ. Prac. & Rem. Code Ann. § 74.001 historical note (Vernon 2005) [Act of June
2, 2003, 78th Leg., R.S., ch. 204, §10.11, 2003 Tex. Gen. Laws 847, 884]. The
legislature's findings included: (1) the number of health care liability claims had increased
inordinately since 1995; (2) a medical malpractice crisis existed in Texas; and (3) the crisis
had caused a material adverse effect on the delivery of medical and health care in Texas. 
Id. Thus, the legislature enacted chapter 74 to reduce the excessive frequency, severity,
and costs of health care liability claims. Id.; see Gutierrez, 237 S.W.3d at 873 (citing In re
Raja, 216 S.W.3d 404, 406 (Tex. App.-Eastland 2006, pet. denied)). 

 2. Chapter 74 of the Texas Civil Practice and Remedies Code

 The parties do not dispute that appellants are health care providers and that
appellees' claims are health care liability claims within the context of chapter 74 of the civil
practice and remedies code. See Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(11)-(13)
(Vernon 2005). A plaintiff asserting a health care liability claim must provide each
defendant physician and health care provider an expert report containing the expert's
curriculum vitae and

 a fair summary of the expert's opinions as of the date of the report regarding
the applicable standards of care, the manner in which the care rendered by
the physician or health care provider failed to meet the standards, and the
causal relationship between that failure and the injury, harm, or damages
claimed.

Id. § 74.351(a), (r)(6); see Palacios, 46 S.W.3d at 877. Specifically, section 74.351(a)
provides that: 

 In a health care liability claim, a claimant shall, not later than the 120th
day after the date the original petition was filed, serve on each party or the
party's attorney one or more expert reports, with a curriculum vitae of each
expert listed in the report for each physician or health care provider against
whom a liability claim is asserted.

Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (emphasis added); see Fulp v. Miller, 286
S.W.3d 501, 506-07 (Tex. App.-Corpus Christi 2009, no pet.). If claimant fails to serve an
expert report on the defendant physician or health care provider within the period specified
by subsection (a) of section 74.351, then, on the motion of the affected physician or health
care provider, the trial court shall dismiss claimant's claim with prejudice and award
reasonable attorney's fees and costs of court to the affected physician or health care
provider. See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b). On appeal, appellants do
not challenge the sufficiency of appellees' expert reports; instead, appellants challenge the
timeliness of appellees' service of their expert reports under the language of section
74.351(a) governing when such reports should be filed. 

B. Methodist Charlton Medical Center v. Steele

 In arguing that the 120-day period began to run when appellees filed their original
petition, appellants rely heavily on the Dallas Court of Appeals's reasoning in Methodist
Charlton Medical Center v. Steele, 274 S.W.3d 47, 50-51 (Tex. App.-Dallas 2008, pet.
denied). In Steele, plaintiffs filed suit against several parties on September 21, 2006,
alleging that defendants "failed to promptly assess, triage, and treat" Felicia Steele in the
emergency room, which resulted in Felicia "having permanent neurologic deficits from a
stroke . . . ." Id. at 48. Plaintiffs timely served their expert reports on the parties named
in the original petition. Id. Plaintiffs later amended their petition to add Methodist Dallas
Medical Center ("Methodist") as a defendant and served expert reports on Methodist on
February 14, 2007. Id. Plaintiffs amended their petition a second time, on June 11, 2007,
to add direct claims against all of the defendants for negligent hiring, supervision, training,
and retention. Id. at 49. However, plaintiffs failed to serve expert reports regarding the
newly-added direct claims. Id. Defendants filed motions to dismiss the newly-added direct
claims, alleging that "the trial court was required to dismiss those claims because appellees
failed to serve expert reports addressing the additional causes of action within 120 days
after the original petition was filed." Id. The trial court denied the motions to dismiss, and
defendants filed an interlocutory appeal. Id.

 In analyzing whether the trial court abused its discretion in denying defendants'
motions to dismiss for failing to timely file expert reports on the newly added direct claims,
the Dallas Court of Appeals engaged in a discussion about the construction of section
74.351(a) and the legislature's intent in promulgating that section. The Steele court noted
that "[t]he plain language of the statute [section 74.351(a)] requires appellees to serve an
expert report on each physician or health care provider against whom a liability claim is
asserted within 120 days of filing their original petition. The plain language of the statute
also requires such a report for each health care liability claim." Id. at 50 (emphasis in
original.) The court went on to hold that the trial court was required to dismiss the newly
added direct claims because plaintiffs failed to file an expert report addressing those
claims. Id. In dicta, the court further noted the following in rejecting appellees' argument
that this interpretation of the statute was contrary to the intent of the legislature:

 The purpose behind section 74.351(a)'s adoption was, among other things,
to remove unwarranted delay and expense, to accelerate the disposition of
non-meritorious cases, and to give hard-and-fast deadlines for the serving
of expert reports. The 2003 amendments created a statute-of-limitations-type deadline within which expert reports must be served. This strict 120-day
deadline can lead to seemingly harsh results. Nonetheless, the legislature
imposed the deadline as part of its effort to reduce excessive frequency . . .
of health care liability claims.

 

 The purpose behind the 2005 amendment to section 74.351(a),
requiring expert reports to be served within 120 days of filing the original
petition rather than within 120 days of filing a health care liability claim, was
to clarify the timing of when an expert report is due. The legislative intent is
that the timing for expert reports be triggered by the filing of the lawsuit. The
effect of the 2005 amendment not only clarifies the timing of when an expert
report is due, it also necessarily limits the time for a party to add claims
without the possibility of dismissal for failing to serve an expert report 120
days from filing the original petition. Thus, this amendment leads to even
harsher results than the 2003 amendments. Nevertheless, the deadline
again serves the legislature's effort to reduce excessive frequency . . . of
health care liability claims. 

 

 The goals of accelerating the disposition of non-meritorious cases and
having hard-and-fast deadlines for service of expert reports, as well as the
purpose of requiring service of an expert report at all, would be completely
undermined if, as appellees suggest, a party had only to wait more than 120
days after filing their petition, amend the petition adding new claims, and
then avoid having to serve an expert report regarding the amended claims. 
Neither the plain language of section 74.351(a) nor the legislative purpose
behind it supports such a reading, and we reject appellees' argument to the
contrary.


Id. at 50-51 (internal citations and quotations omitted). 

 We do not believe the Steele case is persuasive in this matter. First, in Steele, the
court of appeals addressed a situation where plaintiff added new claims against pre-existing defendants after the 120-day period had passed against those pre-existing
defendants. Thus, the focus of the inquiry in Steele was on the newly added claims, not
on any newly-added parties, as here. In fact, the Steele court noted that plaintiffs
amended their petition to add the new claims against Methodist, a party that had been
added previously as a party to the suit, 236 days after plaintiffs' original petition had been
filed. Id. at 49. In the present case, appellees amended their petition to add new claims
against appellants, making them new parties to the suit, and timely served the reports
within 120 days of filing their "original petition" specifically asserting liability against
appellants. Further, plaintiffs in Steele failed to serve any expert reports regarding their
newly added claims, and the court of appeals analyzed whether plaintiffs were required to
submit expert reports on the newly added claims and when such reports would be due;
whereas appellees, in the instant case, filed expert reports within 120 days of appellants
being joined as parties to the suit. Id. at 49-51. 

C. Osonma v. Smith

 Appellees, on the other hand, direct us to a case from the San Antonio Court of
Appeals, which recently addressed a situation virtually identical to the case at bar. See
Osonma v. Smith, No. 04-08-00841-CV, 2009 Tex. App. LEXIS 4959, at **3-6 (Tex.
App.-San Antonio July 1, 2009, pet. denied) (mem. op.). In Osonma, plaintiff "filed her
original petition naming as defendants Methodist Hospital, The Hand Center, P.A. d/b/a
The Hand Center of San Antonio, and David W. Person, M.D." on January 22, 2008. Id.
at *3. However, plaintiff amended her petition on April 3, 2008, adding Timothy Osonma,
M.D., and his employer, IPC, as defendants. Id. Plaintiff subsequently served her expert
reports on Dr. Osonma and IPC on June 2, 2008. Id. On appeal, Dr. Osonma and IPC
argued that plaintiff's expert reports were untimely served because the 120-day period was
triggered by plaintiff's filing of her original petition on January 22, 2008. Id. at **3-4. In
concluding that plaintiff's expert reports were timely served, the Osonma court noted the
following:

 Section 74.351(a)'s requirement that a plaintiff serve an expert report
explaining each defendant physician or health care provider's liability within
120 days from the filing of the original petition does not necessarily refer to
the first-filed petition in the lawsuit; it refers to the first-filed petition naming
that defendant physician or health care provider as a party to the lawsuit.

 

 Further, we note that adopting Dr. Osonma and IPC's interpretation
of the statute would lead to absurd results: after more than 120 days after
filing a lawsuit even if the statute of limitations period had not expired, a
plaintiff could never add another physician or health care provider as a
defendant because she would never be able to timely serve an expert report
on such a defendant.

Id. at *4. The Osonma court further examined the legislature's intent in amending section
74.351(a) to substitute the language "the original petition was filed" for "the claim was filed"
by referencing the following bill analysis written by the Civil Practices Committee regarding
the bill amending section 74.351(a):

 Since the passage of H.B. [House Bill] 4 in the 78th Session, there has been
some confusion regarding the timing of when an expert report is due on a
medical malpractice case. Some have argued that the report is due 120
days from the date of the statutory notice letter, instead of 120 days from the
date of the filing of the original petition. It was the intent of H.B. 4 that the
report be triggered by the filing of the lawsuit.

Id. at *5 (quoting House Comm. on Civil Practices, Bill Analysis, Tex. H.B. 2645, 79th Leg.,
R.S. (2005)). In reconciling the language contained in section 74.351(a) and the bill
analysis written by the Civil Practices Committee, the Osonma court noted that: 

 It appears that the legislature was concerned about arguments that the
report would be due 120 days from the date of the statutory notice letter; we
find no support for Dr. Osonma and IPC's argument that in amending section
74.351(a), the legislature sought to clarify that the 120-day period was
triggered by the first-filed petition, even if the defendant physician or health
care provider was not named as a party in that first-filed petition. 


Id. at **5-6. As a result, the Osonma court concluded that the 120-day period began to run
when defendants were first named as parties to the suit, and therefore, plaintiff timely
served defendants with her expert reports. See id. at *6. 

D. Discussion

 We agree with the San Antonio Court of Appeals' reasoning in Osonma that the
120-day period is triggered by the first-filed petition naming the defendant physician or
health care provider. Accordingly, we hold that the 120-day period in the case at bar
began to run when appellants were first named as defendants on January 8, 2009;
therefore, appellees' April 16, 2009 service of their expert reports on appellants was timely.

 To hold otherwise, as stated by the Osonma court, "would lead to absurd results: 
after more than 120 days after filing a lawsuit, even if the statute of limitations period had
not expired, a plaintiff could never add another physician or health care provider as a
defendant because she would never be able to timely serve an expert report on such a
defendant." Id. at *4. In fact, if we were to conclude, in this case, that the 120-day period
as applied to appellants was triggered by appellees' original petition filed May 27, 2008,
which was within the applicable two-year limitations period, see Tex. Civ. Prac. & Rem.
Code Ann. § 74.251(a) (Vernon 2005), then appellees would have been precluded from
joining other responsible parties to the litigation and asserting potentially meritorious claims
that were uncovered later in the discovery process. We do not believe such an
interpretation was intended by the legislature, and appellants have not directed us to any
relevant authority that the legislature intended as such. See Palacios, 46 S.W.3d at 879
(stating that the purpose of the expert report is to: (1) inform the defendant of the specific
conduct the plaintiff has called into question; and (2) provide a basis for the trial court to
conclude whether the claims have merit); see also Schmidt v. Dubose, 259 S.W.3d 213,
218 (Tex. App.-Beaumont 2008, no pet.) (recognizing the trial court serves as a
gatekeeper with respect to section 74.351(a)'s expert-report requirement and noting that
subsequent expert reports and opinions are governed by the rules of discovery set forth
generally in the rules of civil procedure); Gutierrez, 237 S.W.3d at 873.

 Furthermore, contrary to appellants' assertions, we do not believe that the impact
of our holding frustrates the legislature's purpose to "remove unwarranted delay and
expense, to accelerate the disposition of non-meritorious cases, and to give hard-and-fast
deadlines for the serving of expert reports" so long as each affected physician or health
care provider, in a health care liability claim, is provided an expert report, delineating the
applicable standard of care, how that standard of care was breached, and how the breach
of the standard of care proximately caused the injuries sustained, within 120 days of the
claimant's lawsuit against the particular defendant. See Tex. Civ. Prac. & Rem. Code Ann.
§ 74.351(a), (r)(6); Steele, 274 S.W.3d at 50 (citing Intracare Hosp. N. v. Campbell, 222
S.W.3d 790, 797 (Tex. App.-Houston [1st Dist.] 2007, no pet.)); see also Osonma, 2009
Tex. App. LEXIS 4959, at **4-6. We therefore conclude that the trial court did not abuse
its discretion in denying appellants' motions to dismiss. See Jernigan, 195 S.W.3d at 93;
see also Palacios, 46 S.W.3d at 878. We overrule appellants' sole issue on appeal.

IV. Conclusion

 Having overruled appellants' sole issue on appeal, we affirm the judgments of the
trial court denying appellants' motions to dismiss.

 

 ROGELIO VALDEZ

 Chief Justice

 


Delivered and filed the 

11th day of March, 2010. 
1. In appellees' third amended petition and in an expert report provided by Cheryé C. Callegan, M.D.,
it was alleged that Padre Behavioral Hospital was negligent in refusing to treat Stuart when he first presented
himself on October 29, 2006. Stuart was later admitted to the hospital at 8:45 a.m. on October 30, 2006, with
an admitting diagnosis of opioid dependence. While at the hospital and under the care of Drs. Ganz and May,
Stuart was evaluated, and it was observed that Stuart had blue lips, was mumbling, had slurred speech, and
had labored breathing. Stuart was quickly assessed by nurses, who determined that Stuart was simply going
through withdrawals, and was placed in a room at the hospital. Later, at 5:25 p.m. on October 30, 2006,
Stuart was discovered unresponsive on the bathroom floor in his room. At 6:10 p.m. on the same day, Stuart
was pronounced dead of congestive heart failure. 

2. None of the defendants listed in appellees' original petition are parties to this appeal.