**METHODIST HOSPITAL OF DALLAS
d/b/a Methodist Dallas Medical Center
d/b/a Methodist Health System, Appellant,**

v.

**Mattie KING, Appellee.**

**No. 05–11–00963–CV.**

Court of Appeals of Texas,
Dallas.

April 24, 2012.

Marlow James Muldoon, Stewart Dugger and Dean PLLC, James M. Stewart, Brandon Kulwicki, Marlow James Muldoon, Stewart Stimmel LLP, Dallas, TX, for Appellant.

Kay L. Wey John K. Horany, Kelsey Ciluffo, Van Wey Law, PLLC, Dallas, TX, for Appellee.

Before Justices MORRIS, MARTIN RICHTER, and LANG–MIERS.

## OPINION

Opinion By Justice MORRIS.

In this interlocutory appeal, we address the adequacy of amended expert reports to support certain direct liability claims Mattie King brought against Methodist Hospital of Dallas d/b/a Methodist Dallas Medical Center d/b/a Methodist Health System. Methodist challenges the trial court's order denying in part its motion to dismiss King's direct liability claims. Concluding the expert reports do not satisfy the requirements of chapter 74 of the civil prac-

tice and remedies code with respect to these claims, we reverse in part the trial court's order and render judgment that King's direct liability claims against Methodist be dismissed. We remand the case for further proceedings.

## I.

King sued Methodist and others for negligence after she fell and injured her knee while a patient at the hospital. At the time of her fall, King was being assisted by two Methodist employees.[1] In addition to alleging Methodist was vicariously liable for the negligence of its employees, King's petition also asserted Methodist was directly liable for (1) failing to adequately protect her from injury while she was under its care; (2) failing to develop, implement, maintain, and enforce standard operating procedures (SOPs) to ensure its personnel used proper handling and lifting techniques; (3) failing to adequately train its personnel in its SOPs, to the extent any existed; (4) failing to supervise its personnel to ensure the SOPs, to the extent any existed, were followed; and (5) failing to ensure the personnel responsible for handling and lifting patients properly carried out their duties to King.

King timely served two expert reports pursuant to chapter 74. The report by nurse Jenny Beerman stated that Methodist and its personnel who assisted King breached the standards of care owed to King in various ways thereby causing King's fall. The report by King's treating orthopedic surgeon Dr. Frank Gottschalk stated that the hospital fall caused specific

injuries to King's knee.[2] Methodist filed objections to the reports. The trial court, after a hearing, signed an order noting unspecified deficiencies in the reports and granting King a thirty-day extension to serve amended reports to cure any deficiencies. King timely served amended reports from both experts. Methodist filed objections to the amended reports and moved to dismiss several of King's claims, including all claims against it based upon a direct liability theory. The trial court granted Methodist's motion in part and denied it in part. Specifically, the trial court did not dismiss King's direct negligence claims based on Methodist's alleged failure (1) to enforce SOPs to ensure its personnel responsible for handling and lifting patients used proper techniques to prevent King's fall at the facility; (2) to adequately train its personnel responsible for handling and lifting patients in its SOPs; (3) to supervise its personnel responsible for handling and lifting patients to ensure they followed its SOPs; and (4) to ensure that personnel responsible for the handling and lifting of patients properly carried out their duties to plaintiff.[3] Methodist filed this appeal, seeking reversal of the trial court's order with respect to the direct liability claims remaining against it.

## II.

■ We review a trial court's order on a motion to dismiss a health care liability claim under chapter 74 for an abuse of discretion. See Am. Transitional Care Ctrs. of Tex. v. Palacios, 46 S.W.3d 873, 875 (Tex.2001). Under this standard, we

---

1. King was assisted by nurse Kamesha Armstrong and another individual who is not identified by name.

2. Gottschalk's report does not offer an opinion on the applicable standards of care, breach, or what caused King's fall. His report is limited to opinions with respect to the

specific injuries she received from the fall at Methodist.

3. The trial court's order did not specifically address King's allegation that Methodist was negligent in failing to adequately protect her from injury while she was under its care.

must determine whether the trial court acted arbitrarily and without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985). A trial court has no discretion in determining what the law is or in applying the law to the facts. *See Petty v. Churner*, 310 S.W.3d 131, 134 (Tex.App.-Dallas 2010, no pet.).

A motion to dismiss must be granted if the report does not represent a good faith effort to comply with the statutory definition of an expert report. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(*l*) (West 2012). Although an expert report need not marshal the plaintiff's proof, it must provide a fair summary of the expert's opinions with respect to (1) the applicable standards of care, (2) the manner in which the care rendered by the health care provider failed to meet those standards and (3) the causal relationship between the failure and the injury claimed. *See Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex.2002). It must also inform the defendant of the specific conduct the plaintiff has called into question and provide a basis for the trial court to conclude the claims have merit. *Id.* An expert's mere conclusions about the required elements are insufficient; the report must link the conclusions to the facts, explaining the basis of the expert's opinions. *Id.* When determining the sufficiency of the report, we look exclusively within the four corners of the report itself. *Id.*

Methodist contends the trial court abused its discretion when it refused to dismiss all of King's direct liability claims against it because King's amended expert reports were deficient with respect to those claims in numerous ways. Only Beerman's report addresses the direct liability claims against Methodist and suggests a causal link between its alleged breaches of the standard of care and King's fall. Among other things, Methodist challenges Beerman's expert qualifications and asserts Beerman's report sets forth only conclusory statements with respect to the required elements. It further contends that the report neither informs Methodist of the specific conduct King calls into question nor links any direct act or omission by Methodist to King's injuries. In essence, Methodist contends Beerman merely assumes that because its personnel breached the standard of care, Methodist necessarily failed to adequately train or supervise them with respect to its SOPs with respect to fall prevention.[4]

King acknowledges that her expert reports must support her direct liability claims against Methodist. *See Methodist Charlton Med. Ctr. v. Steele*, 274 S.W.3d 47 (Tex.App.-Dallas 2008, pet. denied). King also notes that her direct liability claims against Methodist involve the hospital's duties to enforce its SOPs with respect to fall prevention, to train its employees in these SOPs, and to supervise its employees to ensure they follow the SOPs. She responds, however, that the reports sufficiently set forth all of the required elements when read together. King specifically argues that, given the medical community's recognition of the preventability of hospital falls noted in Beerman's report, Beerman makes the permissible inference that Methodist breached the applicable standard of care based on the occurrence of King's fall coupled with gaps in the

---

4. Beerman's report also addresses the alleged negligence claims King asserted against Armstrong and the other employee who was assisting her when she fell. The adequacy of Beerman's report with respect to these claims is not before us and Methodist acknowledges that even if the direct claims against it are dismissed, it may still be liable in this case under a vicarious liability theory.

medical records and the breaches by the hospital personnel who assisted King.

Beerman's report is based on her review of King's medical records at Methodist, King's affidavit describing the events of the fall, and Dr. Gottschalk's report. She asserts patient falls in a hospital setting are generally considered preventable "adverse events" and characterized by the National Quality Forum as a "serious reportable event." After detailing the standards of care and breaches applicable to the staff who assisted King, causally connecting these breaches to King's fall, Beerman addresses Methodist's conduct. In relevant part, Beerman's report states the standard of care required Methodist to: (1) adequately protect patients from harm while under the hospital's care; (2) enforce SOPs for fall prevention within the broad national standards prescribed by the Joint Commission on the Accreditation of Healthcare Organizations (JCAHO) and the Centers for Medicare & Medicaid Services (CMS);[5] (3) adequately train its staff and employees in its SOPs to prevent patients from falling at its facility; (4) supervise its staff and employees to ensure the staff follow the hospital's SOPs; and (5) ensure that its staff and employees properly follow the standard of care. Beerman goes on to state that Methodist breached the standard of care by failing to (1) adequately protect King from harm while under its care; (2) to enforce SOPs to ensure its personnel prevented King's fall; (3) to adequately train its personnel in its SOPs to prevent King from falling at its facility; (4) to supervise its personnel to ensure the hospital's SOPs were followed; and (5) to ensure that its personnel properly follow the standard of care applicable to them. Finally, Beerman opines that King would not have fallen if Methodist had (1) protected her from harm while under its care, (2) enforced its SOPs, (3) adequately trained its personnel, (4) adequately supervised its personnel, and (5) ensured its personnel properly followed the applicable standard of care.

Despite King's contentions to the contrary, Beerman's report does not explain how or why Methodist's direct conduct caused King's fall. In fact, it is King and not Beerman who infers a breach by Methodist based on the occurrence of King's fall, gaps in the medical records, and breaches by Methodist's personnel. Although in some instances it may be permissible for an expert to make inferences in a report based on medical history or other facts, Beerman's report does not make such inferences, and we are precluded from guessing as to what she meant or intended with respect to how Methodist's alleged breaches caused King's fall. *See Palacios,* 46 S.W.3d at 878. King need not marshal all her proof in the expert report, but the report must include sufficient detail to allow the trial court to determine if the claim has merit. *See Jelinek v. Casas,* 328 S.W.3d 526, 540 (Tex.2010). Nowhere in her report does Beerman provide information linking Methodist's alleged failure to enforce SOPs on fall prevention, or its failure to train or supervise its staff with respect to these SOPs, to King's fall. Beerman's report does nothing more than simply opine that Methodist's breaches caused King's fall without any explanation tying her conclusion to the facts of this case. Beerman's opinion that Methodist's direct negligence caused King's fall is precisely the type of conclusory statement deemed inadequate to constitute a good faith effort to comply with the statutory definition of an export report. *See Bowie,* 79 S.W.3d at 53. After reviewing Beer-

5. Beerman also details the applicable minimum SOPs Methodist should have implemented based on the JCAHO and CMS standards.

man's report in its entirety, we have determined that it offers no more than a bare assertion that the breaches attributed to Methodist caused King's fall. Because Beerman's report lacks any explanation linking her conclusions that King's fall was caused by Methodist's direct negligence to any relevant facts, the trial court abused its discretion in denying Methodist's motion to dismiss the direct liability claims against it. *See Jelinek*, 328 S.W.3d at 540. Our disposition of this issue makes is unnecessary to address Methodist's challenges to Beerman's expert qualifications. Accordingly, we reverse in part the trial court's order and render judgment that King's direct liability claims against Methodist be dismissed. We remand the case to the trial court for further proceedings consistent with this opinion.