

**NUMBER 13-09-00495-CV**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**PADRE BEHAVIORAL HEALTH SYSTEM,**
**LLC, ET AL.,**                                                    **Appellants,**

**v.**

**LECIA L. CHANEY, ET AL.,**                                        **Appellees.**

---

**On appeal from the 357th District Court**
**of Cameron County, Texas.**

---

# O P I N I O N

**Before Chief Justice Valdez and Justices Garza and Benavides**
**Opinion by Chief Justice Valdez**

Appellants, Padre Behavioral Health System, LLC; Padre Behavioral Hospital, in its

assumed and common name; Continuum Padre, LLC; Samuel Ganz, D.O.; and James M.

May, M.D., appeal from the trial court's denial of motions to dismiss the lawsuit brought by,

Lecia L. Chaney, individually and as independent executrix of the estate of Stuart A.

Chaney, deceased, and as next friend of Elizabeth Chaney and Elliott Chaney, minors; and Ernie J. Chaney, M.D., individually. By one issue, appellants argue that the trial court erred in denying their motions to dismiss because appellees failed to serve on appellants an expert report within 120 days of filing suit. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (Vernon Supp. 2009). We affirm.

## I. BACKGROUND

This appeal arises from the death of Stuart as a result of allegedly negligent care for Stuart's opioid dependence and the dispensing of excessive prescriptions for treatment of a painful foot condition.[1] Appellees filed their original petition on May 27, 2008, asserting health care liability claims against Los Ebanos Pharmacy, LLC; Los Ebanos Pharmacy, in its assumed or common name; Robert J. De La Chica, R. Ph.; Richard J. Stachowiak, R. Ph.; Price Village Pharmacy, in its assumed or common name; Juan Humberto Cavazos, R. Ph.; Jesus A. Caquias, M.D.; and Price Village Family Medical Clinic, Inc.[2] Appellants were not joined as parties to the suit until appellees filed their third amended petition on January 8, 2009.

The crux of this appeal pertains to the timeliness of appellees' service of expert reports on appellants. The record reflects that appellees served appellants with the expert reports of Cheryé C. Callegan, M.D., and Paul W. Diabel, M.D., on April 16, 2009.

---

[1] In appellees' third amended petition and in an expert report provided by Cheryé C. Callegan, M.D., it was alleged that Padre Behavioral Hospital was negligent in refusing to treat Stuart when he first presented himself on October 29, 2006. Stuart was later admitted to the hospital at 8:45 a.m. on October 30, 2006, with an admitting diagnosis of opioid dependence. While at the hospital and under the care of Drs. Ganz and May, Stuart was evaluated, and it was observed that Stuart had blue lips, was mumbling, had slurred speech, and had labored breathing. Stuart was quickly assessed by nurses, who determined that Stuart was simply going through withdrawals, and was placed in a room at the hospital. Later, at 5:25 p.m. on October 30, 2006, Stuart was discovered unresponsive on the bathroom floor in his room. At 6:10 p.m. on the same day, Stuart was pronounced dead of congestive heart failure.

[2] None of the defendants listed in appellees' original petition are parties to this appeal.

2

Appellants filed numerous objections and motions to dismiss appellees' claims, alleging, among other things, that appellees did not timely serve the expert reports of Drs. Callegan and Diabel within the 120-day period provided by law. *See id.* § 74.351(b). Specifically, appellants asserted that the 120-day period began to run from the date appellees filed their original petition, May 27, 2008, not from the date of appellees' third amended petition. *See id.* § 74.351(a). Therefore, based on appellants' contention, appellees were required to serve their expert reports on or about September 24, 2008, a date which preceded appellants' addition as a party in the case. The trial court denied appellants' objections and motions to dismiss, and this accelerated interlocutory appeal ensued. *See* TEX. R. APP. P. 28.1; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(9) (Vernon 2008) (providing for interlocutory appeal of an order denying all or part of relief sought by a motion brought under section 74.351(b) of the civil practice and remedies code).

## II. STANDARD OF REVIEW

We review a trial court's decision to deny a motion to dismiss a health care liability claim under an abuse of discretion standard. *See Jernigan v. Langley*, 195 S.W.3d 91, 93 (Tex. 2006); *see also Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner or without reference to any guiding rules or principles. *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). To the extent resolution of this issue requires interpretation of the statute, we apply a de novo standard of review. *See Pallares v. Magic Valley Elec. Coop.*, 267 S.W.3d 67, 69-70 (Tex. App.–Corpus Christi 2008, pet. denied) (citing *Buck v. Blum*, 130 S.W.3d 285, 290 (Tex. App.–Houston [14th Dist.] 2004, no pet.); *Ponce v. El Paso Healthcare Sys., Ltd.*, 55 S.W.3d 34, 36 (Tex. App.–El Paso 2001, pet. denied)).

## III. ANALYSIS

By their sole issue, appellants argue that appellees did not timely serve their expert reports with the 120-day period prescribed by section 74.351(a); thus, the trial court abused its discretion in denying appellants' motions to dismiss. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). Specifically, appellants argue that the 120-day period began when appellees filed their original petition, even though appellants were not named as parties at that time. *See id.* According to appellees, the 120-day period began to run when appellants were first named as parties to the suit in appellees' third amended petition filed on January 8, 2009, and therefore, the appellees' service of their expert reports on April 16, 2009, was well within the 120-day period. *See id.*

### A. Applicable Law

#### 1. Statutory Construction

The legislature has directed that "[i]n interpreting a statute, a court shall diligently attempt to ascertain legislative intent and shall consider at all times the old law, the evil, and the remedy." TEX. GOV'T CODE ANN. § 312.005 (Vernon 2005). Statutes must be construed as written, and legislative intent determined, if possible, from their express terms. *Simonson v. Keppard*, 225 S.W.3d 868, 879 (Tex. App.–Dallas 2007, no pet.) (citing *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001)). Chapter 74, in its entirety, rather than provisions in isolation, must be considered, and meaning given to each provision consistent with all others. *Id.*

Courts presume that the entire statute is to be effective and a just and reasonable result is intended. *Id.* "Even if a statute is unambiguous, courts may consider the statute's objective; circumstances of its enactment; its legislative history; . . . [and] consequences

4

of a particular construction . . . ." *Univ. of Tex. Health Sci. Ctr. at Houston v. Gutierrez*, 237 S.W.3d 869, 873 (Tex. App.–Houston [1st Dist.] 2007, pet. denied) (citing *Simonson*, 225 S.W.3d at 880). Any words used or omitted are presumed used and omitted purposefully. *Id.* (citing *Simonson*, 225 S.W.3d at 880; *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981)). When the legislature enacted chapter 74, it made several findings. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001 historical note (Vernon 2005) [Act of June 2, 2003, 78th Leg., R.S., ch. 204, §10.11, 2003 Tex. Gen. Laws 847, 884]. The legislature's findings included: (1) the number of health care liability claims had increased inordinately since 1995; (2) a medical malpractice crisis existed in Texas; and (3) the crisis had caused a material adverse effect on the delivery of medical and health care in Texas. *Id.* Thus, the legislature enacted chapter 74 to reduce the excessive frequency, severity, and costs of health care liability claims. *Id.*; *see Gutierrez*, 237 S.W.3d at 873 (citing *In re Raja*, 216 S.W.3d 404, 406 (Tex. App.–Eastland 2006, pet. denied)).

### 2. Chapter 74 of the Texas Civil Practice and Remedies Code

The parties do not dispute that appellants are health care providers and that appellees' claims are health care liability claims within the context of chapter 74 of the civil practice and remedies code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(11)-(13) (Vernon 2005). A plaintiff asserting a health care liability claim must provide each defendant physician and health care provider an expert report containing the expert's curriculum vitae and

> a fair summary of the expert's opinions as of the date of the report regarding the applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

*Id.* § 74.351(a), (r)(6); *see Palacios*, 46 S.W.3d at 877.   Specifically, section 74.351(a)

provides that:

> In a health care liability claim, a claimant shall, *not later than the 120th day after the date the original petition was filed*, serve on each party or the party's attorney one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (emphasis added); *see Fulp v. Miller*, 286

S.W.3d 501, 506-07 (Tex. App.–Corpus Christi 2009, no pet.).  If claimant fails to serve an

expert report on the defendant physician or health care provider within the period specified

by subsection (a) of section 74.351, then, on the motion of the affected physician or health

care provider, the trial court shall dismiss claimant's claim with prejudice and award

reasonable attorney's fees and costs of court to the affected physician or health care

provider.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b).  On appeal, appellants do

not challenge the sufficiency of appellees' expert reports; instead, appellants challenge the

timeliness of appellees' service of their expert reports under the language of section

74.351(a) governing when such reports should be filed.

**B.**     ***Methodist Charlton Medical Center v. Steele***

In arguing that the 120-day period began to run when appellees filed their original

petition, appellants rely heavily on the Dallas Court of Appeals's reasoning in *Methodist*

*Charlton Medical Center v. Steele*, 274 S.W.3d 47, 50-51 (Tex. App.–Dallas 2008, pet.

denied).  In *Steele*, plaintiffs filed suit against several parties on September 21, 2006,

alleging that defendants "failed to promptly assess, triage, and treat" Felicia Steele in the

emergency room, which resulted in Felicia "having permanent neurologic deficits from a

stroke . . . ." *Id.* at 48.  Plaintiffs timely served their expert reports on the parties named

6

in the original petition. *Id.* Plaintiffs later amended their petition to add Methodist Dallas Medical Center ("Methodist") as a defendant and served expert reports on Methodist on February 14, 2007. *Id.* Plaintiffs amended their petition a second time, on June 11, 2007, to add direct claims against all of the defendants for negligent hiring, supervision, training, and retention. *Id.* at 49. However, plaintiffs failed to serve expert reports regarding the newly-added direct claims. *Id.* Defendants filed motions to dismiss the newly-added direct claims, alleging that "the trial court was required to dismiss those claims because appellees failed to serve expert reports addressing the additional causes of action within 120 days after the original petition was filed." *Id.* The trial court denied the motions to dismiss, and defendants filed an interlocutory appeal. *Id.*

In analyzing whether the trial court abused its discretion in denying defendants' motions to dismiss for failing to timely file expert reports on the newly added direct claims, the Dallas Court of Appeals engaged in a discussion about the construction of section 74.351(a) and the legislature's intent in promulgating that section. The *Steele* court noted that "[t]he plain language of the statute [section 74.351(a)] requires appellees to serve an expert report on each physician or health care provider against whom a liability claim is asserted within 120 days of filing their original petition. The plain language of the statute also requires such a report for each health care liability *claim*." *Id.* at 50 (emphasis in original.) The court went on to hold that the trial court was required to dismiss the newly added direct claims because plaintiffs failed to file an expert report addressing those claims. *Id.* In dicta, the court further noted the following in rejecting appellees' argument that this interpretation of the statute was contrary to the intent of the legislature:

> The purpose behind section 74.351(a)'s adoption was, among other things, to remove unwarranted delay and expense, to accelerate the disposition of

7

non-meritorious cases, and to give hard-and-fast deadlines for the serving of expert reports. The 2003 amendments created a statute-of-limitations-type deadline within which expert reports must be served. This strict 120-day deadline can lead to seemingly harsh results. Nonetheless, the legislature imposed the deadline as part of its effort to reduce excessive frequency . . . of health care liability claims.

The purpose behind the 2005 amendment to section 74.351(a), requiring expert reports to be served within 120 days of filing the original petition rather than within 120 days of filing a health care liability claim, was to clarify the timing of when an expert report is due. The legislative intent is that the timing for expert reports be triggered by the filing of the lawsuit. The effect of the 2005 amendment not only clarifies the timing of when an expert report is due, it also necessarily limits the time for a party to add claims without the possibility of dismissal for failing to serve an expert report 120 days from filing the original petition. Thus, this amendment leads to even harsher results than the 2003 amendments. Nevertheless, the deadline again serves the legislature's effort to reduce excessive frequency . . . of health care liability claims.

The goals of accelerating the disposition of non-meritorious cases and having hard-and-fast deadlines for service of expert reports, as well as the purpose of requiring service of an expert report at all, would be completely undermined if, as appellees suggest, a party had only to wait more than 120 days after filing their petition, amend the petition adding new claims, and then avoid having to serve an expert report regarding the amended claims. Neither the plain language of section 74.351(a) nor the legislative purpose behind it supports such a reading, and we reject appellees' argument to the contrary.

*Id.* at 50-51 (internal citations and quotations omitted).

We do not believe the *Steele* case is persuasive in this matter. First, in *Steele*, the court of appeals addressed a situation where plaintiff added new claims against pre-existing defendants after the 120-day period had passed against those pre-existing defendants. Thus, the focus of the inquiry in *Steele* was on the newly added claims, not on any newly-added parties, as here. In fact, the *Steele* court noted that plaintiffs amended their petition to add the new claims against Methodist, a party that had been added previously as a party to the suit, 236 days after plaintiffs' original petition had been filed. *Id.* at 49. In the present case, appellees amended their petition to add new claims

8

against appellants, making them new parties to the suit, and timely served the reports within 120 days of filing their "original petition" specifically asserting liability against appellants. Further, plaintiffs in *Steele* failed to serve any expert reports regarding their newly added claims, and the court of appeals analyzed whether plaintiffs were required to submit expert reports on the newly added claims and when such reports would be due; whereas appellees, in the instant case, *filed* expert reports within 120 days of appellants being joined as parties to the suit. *Id.* at 49-51.

**C.** *Osonma v. Smith*

Appellees, on the other hand, direct us to a case from the San Antonio Court of Appeals, which recently addressed a situation virtually identical to the case at bar. *See Osonma v. Smith*, No. 04-08-00841-CV, 2009 Tex. App. LEXIS 4959, at **3-6 (Tex. App.–San Antonio July 1, 2009, pet. denied) (mem. op.). In *Osonma*, plaintiff "filed her original petition naming as defendants Methodist Hospital, The Hand Center, P.A. d/b/a The Hand Center of San Antonio, and David W. Person, M.D." on January 22, 2008. *Id.* at *3. However, plaintiff amended her petition on April 3, 2008, adding Timothy Osonma, M.D., and his employer, IPC, as defendants. *Id.* Plaintiff subsequently served her expert reports on Dr. Osonma and IPC on June 2, 2008. *Id.* On appeal, Dr. Osonma and IPC argued that plaintiff's expert reports were untimely served because the 120-day period was triggered by plaintiff's filing of her original petition on January 22, 2008. *Id.* at **3-4. In concluding that plaintiff's expert reports were timely served, the *Osonma* court noted the following:

> Section 74.351(a)'s requirement that a plaintiff serve an expert report explaining each defendant physician or health care provider's liability within 120 days from the filing of the original petition does not necessarily refer to the first-filed petition in the lawsuit; it refers to the first-filed petition naming that defendant physician or health care provider as a party to the lawsuit.

9

Further, we note that adopting Dr. Osonma and IPC's interpretation of the statute would lead to absurd results: after more than 120 days after filing a lawsuit even if the statute of limitations period had not expired, a plaintiff could never add another physician or health care provider as a defendant because she would never be able to timely serve an expert report on such a defendant.

*Id.* at *4. The *Osonma* court further examined the legislature's intent in amending section 74.351(a) to substitute the language "the original petition was filed" for "the claim was filed" by referencing the following bill analysis written by the Civil Practices Committee regarding the bill amending section 74.351(a):

Since the passage of H.B. [House Bill] 4 in the 78th Session, there has been some confusion regarding the timing of when an expert report is due on a medical malpractice case. Some have argued that the report is due 120 days from the date of the statutory notice letter, instead of 120 days from the date of the filing of the original petition. It was the intent of H.B. 4 that the report be triggered by the filing of the lawsuit.

*Id.* at *5 (quoting House Comm. on Civil Practices, Bill Analysis, Tex. H.B. 2645, 79th Leg., R.S. (2005)). In reconciling the language contained in section 74.351(a) and the bill analysis written by the Civil Practices Committee, the *Osonma* court noted that:

It appears that the legislature was concerned about arguments that the report would be due 120 days from the date of the statutory notice letter; we find no support for Dr. Osonma and IPC's argument that in amending section 74.351(a), the legislature sought to clarify that the 120-day period was triggered by the first-filed petition, even if the defendant physician or health care provider was not named as a party in that first-filed petition.

*Id.* at **5-6. As a result, the *Osonma* court concluded that the 120-day period began to run when defendants were first named as parties to the suit, and therefore, plaintiff timely served defendants with her expert reports. *See id.* at *6.

D.     Discussion

We agree with the San Antonio Court of Appeals' reasoning in *Osonma* that the 120-day period is triggered by the first-filed petition naming the defendant physician or health care provider. Accordingly, we hold that the 120-day period in the case at bar

10

began to run when appellants were first named as defendants on January 8, 2009; therefore, appellees' April 16, 2009 service of their expert reports on appellants was timely.

To hold otherwise, as stated by the *Osonma* court, "would lead to absurd results: after more than 120 days after filing a lawsuit, even if the statute of limitations period had not expired, a plaintiff could never add another physician or health care provider as a defendant because she would never be able to timely serve an expert report on such a defendant." *Id.* at *4. In fact, if we were to conclude, in this case, that the 120-day period as applied to appellants was triggered by appellees' original petition filed May 27, 2008, which was within the applicable two-year limitations period, *see* TEX. CIV. PRAC. & REM. CODE ANN. § 74.251(a) (Vernon 2005), then appellees would have been precluded from joining other responsible parties to the litigation and asserting potentially meritorious claims that were uncovered later in the discovery process. We do not believe such an interpretation was intended by the legislature, and appellants have not directed us to any relevant authority that the legislature intended as such. *See Palacios*, 46 S.W.3d at 879 (stating that the purpose of the expert report is to: (1) inform the defendant of the specific conduct the plaintiff has called into question; and (2) provide a basis for the trial court to conclude whether the claims have merit); *see also Schmidt v. Dubose*, 259 S.W.3d 213, 218 (Tex. App.–Beaumont 2008, no pet.) (recognizing the trial court serves as a gatekeeper with respect to section 74.351(a)'s expert-report requirement and noting that subsequent expert reports and opinions are governed by the rules of discovery set forth generally in the rules of civil procedure); *Gutierrez*, 237 S.W.3d at 873.

Furthermore, contrary to appellants' assertions, we do not believe that the impact of our holding frustrates the legislature's purpose to "remove unwarranted delay and expense, to accelerate the disposition of non-meritorious cases, and to give hard-and-fast

deadlines for the serving of expert reports" so long as each affected physician or health care provider, in a health care liability claim, is provided an expert report, delineating the applicable standard of care, how that standard of care was breached, and how the breach of the standard of care proximately caused the injuries sustained, within 120 days of the claimant's lawsuit against the particular defendant. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a), (r)(6); *Steele*, 274 S.W.3d at 50 (citing *Intracare Hosp. N. v. Campbell*, 222 S.W.3d 790, 797 (Tex. App.–Houston [1st Dist.] 2007, no pet.)); *see also Osonma*, 2009 Tex. App. LEXIS 4959, at **4-6. We therefore conclude that the trial court did not abuse its discretion in denying appellants' motions to dismiss. *See Jernigan*, 195 S.W.3d at 93; *see also Palacios*, 46 S.W.3d at 878. We overrule appellants' sole issue on appeal.

## IV. CONCLUSION

Having overruled appellants' sole issue on appeal, we affirm the judgments of the trial court denying appellants' motions to dismiss.

ROGELIO VALDEZ
Chief Justice

Delivered and filed the
11th day of March, 2010.

12