NO. 07-09-0370-CV

 

IN THE COURT OF
APPEALS

 

FOR THE SEVENTH
DISTRICT OF TEXAS

 

AT AMARILLO

 

PANEL C

 

AUGUST
10, 2010

 

______________________________

 

 

DAYBREAK COMMUNITY
SERVICES, INC., APPELLANT

 

V.

 

LISA CARTRITE, AS
LEGAL REPRESENTATIVE OF

THE ESTATE OF LACY
DONN VASQUEZ, APPELLEE

 

 

_________________________________

 

FROM THE 47TH
DISTRICT COURT OF RANDALL COUNTY;

 

NO. 60,754-A;
HONORABLE HAL MINER, JUDGE

 

_______________________________

 

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

OPINION

            Presenting
two issues, Daybreak Community Services, Inc. ("Daybreak") challenges
the trial court's order denying its Motion to Dismiss
the healthcare liability suit filed by Lisa Cartrite ("Cartrite"), as
legal representative of the Estate of Lacy Donn
Vasquez, deceased.  Daybreak questions (1)
whether an expert report delivered prior to the filing of a health care
liability claim satisfies the service requirements of section 74.351(a) of the
Texas Civil Practice and Remedies Code, and (2) whether a health care liability
claimant's misidentification of a health care provider entitles the claimant to
a new 120-day expert report deadline under section 74.351(a) of the Code.  We affirm.

Factual
and Procedural Background   

            On September 23, 2006, Lacy Donn Vasquez, a twenty-three year old mentally retarded
resident of Harvard House, a group home owned and operated by Daybreak
Community Services, Inc., was found by staff in a bathtub with her face
underwater.[1]  According to Cartrite's
pleadings, Vasquez was to be closely monitored and should not have been allowed
to take an unsupervised bath.  After
being found by staff, Vasquez was hospitalized and placed on life support with
a poor prognosis.  Life support was
removed later that night and she died in the early morning hours of September
24, 2006.             

            On
October 10, 2006, Cartrite engaged counsel for the purpose of pursuing a health
care liability claim on behalf of Lacy's estate.  That day, Cartrite's counsel sent a letter,
simply addressed to "Daybreak" at its Amarillo address, notifying
them of his representation.  Two months
later, on December 10, 2007, Cartrite's counsel sent notice of her claim to an
attorney representing Daybreak.  Enclosed
with that notice was the curriculum vitae and report of Frances Foster, M.S.N.,
A.P.R.N., B.C. 
The notice specifically claimed to be in satisfaction of the statutory
requirements of sections 74.051 and 74.351 of the Texas Civil Practices and
Remedies Code.[2]  In that letter Cartrite's counsel stated that
she was "willing to mediate her claims and avoid a lawsuit, if
possible."

In response to the December 10
letter, on January 10, 2008, Daybreak's counsel corresponded with Cartrite's
counsel, notifying him, among other things, the following:

[w]ith respect to Nurse Foster's report and CV, it appears
that same have been forwarded to comply with § 74.351 regarding "expert
reports."  Though we will review and
consider the opinions of Nurse Foster, the production of her report at this
time is premature.

            After settlement attempts were
unsuccessful, on April 15, 2008, Cartrite filed a health care liability suit
alleging, among other claims, medical malpractice and gross negligence against
"Daybreak Group, Ltd. Co."
("Daybreak Group").  The
petition provided that service could be accomplished by serving
"registered agent Jeanne C. Page, 2505 S. I-35W, Burleson, Texas
76028."  Daybreak Group filed an original
answer together with a motion to transfer venue.  On November 7, 2008, counsel for Daybreak
Group served a letter on Cartrite's counsel reminding him of earlier
correspondence in which counsel noted that the December 2007 furnishing of the
pre-suit expert report and curriculum vitae were premature.  Counsel for Daybreak Group continued in the
letter, "[p]laintiff did not serve Daybreak or its counsel with a written
expert report within 120 days from the date suit was filed."   Counsel concluded that Cartrite had failed
to comply with section 74.351(a) and consequently, discovery should be stayed
under section 74.351(s).  

            Three
days later, Cartrite's counsel responded by letter expressing discontent with
Daybreak Group's "gotcha" letter. 
Cartrite's counsel's letter included post-suit service, this time via facsimile,
of Nurse Foster's expert report and curriculum vitae.

            On
January 9, 2009, counsel for Cartrite and Daybreak Group entered into an agreed
order on a change of venue to Randall County and the suit proceeded.  On May 26, 2009, Daybreak Group filed a
traditional and no-evidence motion for summary judgment alleging, in part, as
grounds:

Daybreak Group, Ltd. Co.
(Daybreak Group) does not own or operate Harvard House.  Moreover, Daybreak Group does not provide
health care or medical care to residents of Harvard House, and did not provide
any such care to decedent Lacy Donn Vasquez.  Simply stated, Daybreak Group provides
financial, accounting, payroll and administrative support services to Daybreak
Community Services.  

            Approximately
six weeks later, the parties entered into a Rule 11 agreement, the terms of
which would allow Cartrite to amend her pleadings to substitute the correct
defendant, "Daybreak Community Services, Inc.," and in return,
Daybreak Group would withdraw its motion for summary judgment.[3]  

            On
July 6, 2009, Cartrite filed her First Amended Petition against "Daybreak
Community Services, Inc.," a health care provider, alleging, among other
claims, gross negligence and medical malpractice.  The amended petition provided that service
could be accomplished by serving "registered agent Jeanne C. Page, 2505 S.
I-35W, Burleson, Texas 76028."[4]  Three days after amending her petition,
Cartrite served Daybreak Community Services, Inc., by telephonic document
transfer, with Nurse Foster's expert report and curriculum vitae.  That same day, Daybreak Community Services,
Inc. filed its Motion to Dismiss For Failure to Comply with Texas Civil
Practice and Remedies Code § 74.351. 
Daybreak alleged that the pre-suit expert report provided on November
10, 2008, did not constitute service of an expert report within 120 days after
suit was filed.  Daybreak continued that
the 120 day deadline expired on August 13, 2008, and Cartrite did not
"serve" Nurse Foster's report or another report before that
deadline.  Thus, Daybreak concluded, the
service requirements of section 74.351(a) had not been satisfied.  Relying on subparagraph (b) of the statute,
Daybreak requested dismissal of the suit with prejudice together with an award
of attorney's fees and costs.

            By
her response to the motion to dismiss, Cartrite urged the trial court to deny
the motion to dismiss her claims for failure to "re-serve" the same
exact documents Daybreak already possessed and asserted that Daybreak had not
been prejudiced.  She argued the
Legislature's intent in requiring early service of expert reports to facilitate
early settlements, reduce costs, and discourage frivolous lawsuits was
satisfied.  She further argued that
Daybreak Community Services, Inc. was served "no later than 120 days after
Daybreak Community Services, Inc. became a Defendant in the lawsuit."  

Daybreak filed a reply to Cartrite's response noting
that the time in which to file an expert report begins with the filing of an
original petition.  Relying on the
doctrine of misidentification, rather than misnomer, it also refuted Cartrite's
claim that she should be entitled to a new
120 day deadline after filing her first amended petition correctly naming
Daybreak Community Services, Inc.  On
October 29, 2009, the trial court signed an Order Denying Defendant's Motion to
Dismiss and this accelerated appeal followed. 


Applicable Law          

            Before the repeal of the
Medical Liability and Insurance Improvement Act of Texas in 2003,[5]
former article 4590i, section 13.01 provided in part:[6]

(d)
[n]ot later than the later of the 180th day after the date on which a
health care liability claim is filed . . . , the claimant shall, for each
physician or health care provider against whom a claim is asserted:

(1)
furnish to
counsel for each physician or health care provider one or more expert reports,
with a curriculum vitae of each expert listed in the report . . . .

 

(Emphasis added). 
After the repeal of the Act, the Legislature codified the laws governing
health care liability claims in chapter 74 of the Texas Civil Practice and
Remedies Code.[7]  As pertinent here, after the 2003 enactment,
section 74.351(a) provided:[8]

[i]n
a health care liability claim, a claimant shall, not later than the 120th day after the date the claim was
filed, serve on each party or the
party's attorney one or more expert reports, with a curriculum vitae for each
expert listed in the report . . . .

 

(Emphasis added). 
Significant changes in 2003 included decreasing the number of days in
which to provide an expert report from 180 to 120 and changing the manner in
which the report is provided from "furnish" to
"serve."  In 2005, the
Legislature amended section 74.351(a) to provide:[9]

[i]n
a health care liability claim, a claimant shall, not later than the 120th day after the date the original petition is filed, serve on
each party or the party's attorney one or more expert reports, with a
curriculum vitae of each expert listed in the report for each physician or
health care provider against whom a liability claim is asserted. . . .

 

(Emphasis added). 
The only change made in 2005 was the substitution of "original
petition" for "claim."  

            Because Cartrite's cause
of action accrued in September 2006, we will apply chapter 74 of the Texas
Civil Practice and Remedies Code as it currently exists, including the 2005
amendment.[10]  

Standard
of Review

            A trial
court's decision on a motion to dismiss under section 74.351 is reviewed for
abuse of discretion.  Jernigan v. Langley, 195 S.W.3d 91, 93
(Tex. 2006).  A trial court has no
discretion in determining what the law is or in applying the law to the
facts.  Walker v. Packer, 827 S.W.2d 833, 840
(Tex. 1992).  Questions of law are
subject to a de novo review.  See generally Johnson v. City of Fort Worth,
774 S.W.2d 653, 656 (Tex. 1989) (holding that "matters of statutory
construction are questions of law for the court to decide rather than issues of
fact").  However, once we determine
the proper construction of section 74.351(a), we must then review whether the
trial court abused its discretion in the manner in which it applied the statute
to the facts of the case.  Palladian Bldg. Co. v. Nortex Foundation Designs, Inc., 165 S.W.3d 430, 436 (Tex.App.--Fort Worth 2005, no pet.).  A trial court abuses its discretion when it
acts in an arbitrary or unreasonable manner or without reference to any guiding
rules or principles.  Walker v. Gutierrez, 111 S.W.3d 56, 62
(Tex. 2003).  

Statutory
Construction of Chapter 74

            Any legal term or word of art used
in chapter 74, not otherwise defined in the chapter, shall have such meaning as
is consistent with the common law.  §
74.001(b).  This provision essentially
restates the rule of statutory construction that terms in a statute are to be
given their ordinary meaning.  See Tex. Gov't Code Ann. § 312.002(a)
(Vernon 2005).  See also Kendrick v. Garcia, 171 S.W.3d
698, 704 (Tex.App.--Eastland 2005, pet. denied).  

The primary goal of statutory construction is to determine
and give effect to the Legislature's intent. 
Leland v. Brandal, 257 S.W.3d 204, 206 (Tex. 2008).  We look first to the statute's language to
determine that intent, as we consider it "a fair assumption that the
Legislature tries to say what it means, and therefore the words it chooses
should be the surest guide to legislative intent."  Fitzgerald
v. Advanced Spine Fixation Sys.,
Inc., 996 S.W.2d 864, 866 (Tex.
1999).  Furthermore, we presume the
Legislature intended a just and reasonable result by enacting the statute.  Tex. Gov't Code Ann. §
311.021(3) (Vernon 2005).  The
general rule for statutory interpretation applies unless enforcing the plain
language of the statute as written would produce absurd results.  See
Entergy Gulf States, Inc. v. Summers, 282 S.W.3d 433, 437 (Tex. 2009).

The purpose behind the adoption of section 74.351(a)
was, among other things, to "remove unwarranted delay and expense, to
accelerate the disposition of non-meritorious cases, and to give
hard--and--fast deadlines for the serving of expert reports."  Intracare
Hosp. N. v. Campbell, 222 S.W.3d
790, 797 (Tex.App.--Houston [1st Dist.] 2007, no pet.).  The 2003 codification created a statute of
limitations type deadline before which expert reports must be served.  See Ogletree v. Matthews, 262 S.W.3d 316,
319 (Tex. 2007).  If no report was served
before the 120 day deadline, the Legislature denied trial courts the discretion
to deny motions to dismiss or grant extensions. 
Badiga v. Lopez, 274 S.W.3d
681, 683 (Tex. 2009).  This
seemingly harsh result comports with the Legislature's effort to "reduce
excessive frequency . . . of health care liability claims . . . ."  Ogletree, 262 S.W.3d at
320 (citing Act of June 2, 2003, 78th Leg., R.S., ch.
204, § 10.11(b)[(1)], 2003 Tex. Gen. Laws 847, 884)).

In 2005, section 74.351(a) was amended to require
expert reports to be filed not later than 120 days after the original petition is filed.  The purpose of the amendment was to
"clarify" the timing of when an expert report is due.  See Methodist Charlton
Medical Center v. Steele, 274 S.W.3d 47, 50 (Tex.App.--Dallas 2008, pet.
denied).  The Legislature
rationalized the change as follows:

[s]ince
the passage of House Bill 4 in the 78th Session, there has been some confusion
regarding the timing of when an expert report is due on a medical malpractice
case.  Some have argued that the report
is due 120 days from the date of the statutory notice letter, instead of 120
days from the date of the filing of the original petition.  It was the intent of HB 4 that the report be
triggered by the filing of the lawsuit.

 

See Padre Behavioral Health Sys., LLC v. Chaney, 310 S.W.3d 78, 84-85 (Tex.App.--Corpus Christi 2010,
no pet. h.) (citing Osonma v. Smith, No. 04-08-00841-CV, 2009 Tex.App. LEXIS
4959, at *4 (Tex.App.--San Antonio July 1, 2009, pet. denied)).  See also
Stroud v. Grubb, No. 01-09-00945-CV, 2010 Tex.App. LEXIS
3675, at *7 (Tex.App.--Houston [1st Dist.] May 13,
2010, pet. filed June 28, 2010) (citing House Comm. on Civil Practices,
Bill Analysis, Tex. H.B. 2645, 79th
Leg. R.S. (2005)).

Analysis

I. 
Pre-suit Production of an Expert Report 

            By issue one, Daybreak maintains the
trial court erred in denying its motion to dismiss because pre-suit production
of an expert report does not comply with the requirements of section
74.351(a).  Daybreak relies on Poland v. Ott,
278 S.W.3d 39 (Tex.App.--Houston [1st Dist.] 2008, pet. denied)(subsequent opinion at Poland
v. Ott, No. 01-07-00199-CV, 2009 Tex.App. LEXIS 3766 (Tex.App.--Houston [1st Dist.] Jan. 22, 2009,
pet. denied),[11]
St. Lukes
Episcopal Hosp. v. Poland, 288 S.W.3d 38 (Tex.App.--Houston [1st Dist.]
2009, pet. denied), and Offenbach v.
Stockton, 285 S.W.3d 517 (Tex.App.--Dallas 2009, pet. granted Feb. 12,
2010), in support of its position that providing a pre-suit expert report does
not satisfy the requirements of chapter 74 of the Code.  See
generally St. Lukes Episcopal Hosp, 288 S.W.3d at
44 (applying the pre-2005 version of section 74.351(a) and holding that the 120
day period in which to file an expert report was triggered by the filing of a
health care liability claim); Offenbach,
285 S.W.3d at 521-22 (applying the pre-2005 version of section 74.351(a) and
holding that pre-suit service of an expert report on a potential defendant's
insurance carrier did not satisfy the statute). 
Cartrite submits that section 74.351 is unambiguous, setting a deadline and not a window, by
allowing service any time not later than
the 120th day after the date the
claim was filed.  Cartrite relies heavily
on Justice Jennings's dissents in Ott, 278 S.W.3d at 43, and St. Lukes Episcopal Hosp., 288 S.W.3d at
54, in support of her arguments. 

            These cases, all involving pre-suit
service of expert reports, are, however, distinguishable from the case at bar. Each
of these cases involve application of section 74.351(a) as it existed after the
2003 codification of statutes involving health care liability claims, but
before the 2005 amendment.  The 2005
amendment, which provides that an expert report be served not later than 120
days after the original petition is
filed, was intended to clarify that the deadline for filing expert reports is
now triggered by the filing of an original petition.  Steele,
274 S.W.3d at 50.  Therefore, these cases
are legally and factually distinguishable from the case at hand because Cartrite's
claims fall under the current version of section 74.351(a).  

Considering that section 74.351(a) was amended in
2005, Cartrite's cause of action accrued after that amendment, and our ultimate
disposition of Daybreak's second issue, we deem it unnecessary to address the
parties' arguments relating to pre-suit service.  See Tex.
R. App. P. 47.1.   Accordingly, we
express no opinion as to whether or not section 74.351(a) creates a window
within which an expert report must be served, or whether it establishes a
deadline before which that report must be served.  Issue one is pretermitted.

II. The 120 Day Deadline

By issue two, Daybreak contends that Cartrite is
incorrect in arguing that the amended petition naming Daybreak Community
Services, Inc. as a defendant provided Cartrite with a new 120 day
deadline.  We disagree with Daybreak's
contention.

When considering the provisions of section 74.351(a)
requiring that an expert report be served not later than 120 days after the
filing date of the original petition,
an interpretation of that provision as applying exclusively to the first
pleading filed by a claimant, regardless of whom that pleading alleges a health
care liability claim against, "runs into a number of interpretational and
logical problems."  See Hayes v. Carroll, No.
03-08-00217-CV, 2010 Tex.App. LEXIS 3637, at *8-9
(Tex.App.--Austin May 14, 2010, no pet. h.).  Referencing the House and Senate Bill
analyses,[12]
the Austin Court of Appeals first noted that the primary purpose of the
amendment was to clarify that the 120 day deadline did not run from the date of
the statutory notice letter.  Id. at *10.  The court then noted that the intent of the
statute creating the 120 day deadline was to have that deadline triggered by the filing of the lawsuit."  (Emphasis added).  The filing of the lawsuit was the demarcation
event triggering the 120 day deadline.  Id.  "If a defendant has not been
added to a case, there has yet to be a lawsuit filed against that
defendant."  Id. at *10-11.  Regardless of how an amended pleading is
styled, it is the original or first petition bringing a lawsuit as to that
defendant that triggers the 120 day deadline for filing an expert report for
purposes of a health care liability claim. 
Id. at *11.  A construction of section 74.351(a) that
interprets the term "original petition" as being the first document
filed in a case that brings a claim against a particular defendant is
consistent with the available legislative history on the issue.  Id.

            Interpreting
the term "original petition" as referring only to the first petition
filed in a cause number regardless of who is named as a defendant presents a
quandary.  If the 120 day deadline begins
from the first petition filed, a plaintiff could never add another physician or
health care provider as a defendant beyond 120 days because the plaintiff would
never be able to timely serve an expert report as to that defendant.  Id. at
*11-12.  Such an interpretation would
produce an absurd result which runs afoul of statutory interpretation.  See Entergy Gulf States, Inc.,
282 S.W.3d at 437.  It would also
create the potential for unreasonable or unjust results.  Hayes,
2010 Tex.App. LEXIS 3637, at *12.  The court in Hayes added that it is not the title of the pleading that is
dispositive; rather, it is the substance of the petition with respect to the
health care providers who are named as defendants that is dispositive.  Id.
at *13-14.

The Corpus Christi Court of Appeals, Houston First
Court of Appeals, and San Antonio Court of Appeals have
all addressed this issue and have also concluded that the first-filed petition
naming a particular defendant physician or health care provider as a party to
the lawsuit triggers the 120 day deadline for filing an expert report as to
that party.  See Padre Behavioral Health Sys., LLC, 310 S.W.3d at 85; Stroud, 2010 Tex.App. LEXIS 3675, at *12; Osonma, 2009 Tex.App.
LEXIS 4959, at *4.  The Corpus Christi Court of Appeals in Padre Behavioral Health Sys., LLC, drew from the reasoning in Osonma.  310 S.W.3d at 84-85.  

In Osonma, certain defendants in a health care liability case
were not joined as parties until plaintiff filed her third amended petition,
well after 120 days from the filing of the original petition.  Defendants filed motions to dismiss based in
part on untimely service of expert reports. 
The trial court denied the motions to dismiss.  In affirming the trial court's decision, the San
Antonio Court of Appeals examined the legislative history and concluded that
the Legislature intended the substitution of "original petition" for
"claim" in 2005 to mean that the deadline for serving an expert
report be triggered by the filing of the lawsuit against the defendant entitled
to the statutory notice.  The court also
recognized that limiting "original petition" to the first-filed
petition in the cause would lead to an absurd result.  Osonma, 2009 Tex.App. LEXIS 4959, at *4-5.  In Stroud,
the Houston First Court of Appeals held that the 120 day deadline was triggered
when the claimant first asserts a health care liability claim against a
particular defendant in a petition.  2010 Tex.App. LEXIS 3675, at *13.

The Dallas Court of Appeals, in Steele, 274 S.W.3d at 50, and the Houston Fourteenth Court of
Appeals in Maxwell v. Seifert, 237
S.W.3d 423, 426 (Tex.App.--Houston [14th Dist.] 2008, pet. denied), have strictly
interpreted the phrase "not later than the 120th day after the date the
'original petition' was filed" as relating to the first petition filed.  However, Steele
and Maxwell are distinguishable
because they both involve the addition of new claims and service of expert
reports regarding those claims in amended petitions against pre-existing
defendants rather than the service of an expert report on a newly added party.  

In the case before us, the original petition was
filed against Daybreak Group, Ltd. Co. on April 15, 2008.  Daybreak argues that service of Cartrite's
expert report was therefore due no later than August 13, 2008, 120 days after
filing the original petition.  However, as
Daybreak and Daybreak Group have both argued, they are separate and
distinguishable entities, with Daybreak Group merely providing Daybreak with
"financial, accounting, payroll and administrative support
services."  As such, Daybreak Group is
not a health care provider.  When
Cartrite filed her first amended petition on July 6, 2009, alleging health care
liability claims for the first time against Daybreak Community Services, Inc.,
a health care provider, she was entitled to have 120 days from the filing of
that petition in which to serve Nurse Foster's expert report and curriculum
vitae.  Three days later, on July 9,
2009, Cartrite properly served Daybreak Community Services, Inc. with a copy of
Nurse Foster's expert report and curriculum vitae.[13]  Because Daybreak Community Services, Inc. was
served within 120 days of the first-filed petition naming it as a defendant, we
conclude the trial court did not abuse its discretion in denying Daybreak's
motion to dismiss based on an untimely expert report.  In reaching our conclusion, we follow the
rationale and logic of the decisions from our sister courts in Austin, Corpus
Christi, the First District of Houston, and San Antonio.  Issue two is overruled.        

We note that Daybreak further contends that
Cartrite's position that Daybreak Community Services, Inc. was not sued until
her first amended petition was filed on July 6, 2009, time bars her claim.  See
§ 74.251(a).  At this juncture, that argument
is premature and not before this Court. 
Daybreak has never sought summary judgment based upon a statute of
limitations defense and the merits of that claim are still subject to full
adjudication before the trial court.            

Conclusion

            Accordingly, the trial court's order
denying the Motion to Dismiss filed by Daybreak Community Services, Inc. is
affirmed. 

 

                                                                                    Patrick A. Pirtle

                                                                                          Justice

 

 











[1]The facility operated by Daybreak Community
Services, Inc. is a certified home and community-based services waiver program
for persons with mental retardation and, as such, Daybreak Community Services,
Inc. is a "health care provider" for purposes of chapter 74 of the
Texas Civil Practice and Remedies Code.  Tex. Civ. Prac. and Rem. Code Ann. §§ 74.001(a)(11)(I) and (a)(12)(A)(vii) (Vernon
2005).  

 





[2]Unless
otherwise designated, all references herein to "§" or
"section" are to the Texas Civil Practice and Remedies Code Annotated
(Vernon 2005 and Supp. 2009).





[3]The motion for summary judgment was withdrawn
a week later.

 





[4]The
registered agent and address for both Daybreak Group, Ltd. Co. and Daybreak
Community Services, Inc. are the same.  

 





[5]See Act of June 2, 2004,
78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen.
Laws 847, 884.

 





[6]See Act of May 5, 1995,
74th Leg., R.S., ch. 140, § 1, 1995 Tex. Gen. Laws
985, 986.

 





[7]See Act of June 2, 2003,
78th Leg., R.S., ch. 204, §§ 10.01-.09, 2003 Tex.
Gen. Laws 847, 864-84.

 





[8]See Act of June 2, 2003,
78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen.
Laws 847, 875.

 





[9]See Act of May 18, 2005, 79th Leg.,
R.S., ch. 635, § 1, 2005 Tex. Gen. Laws 1590.

 





[10]Id. at § 2 (providing "[t]his Act
applies only to a cause of action that accrues on or after the effective date
of this Act.")





[11]The
1st Court of Appeals originally issued an opinion in Cause No. 01-07-00199-CV
on January 31, 2008.  That opinion was
withdrawn and a second opinion was issued in its stead on December 19,
2008.  That second opinion appears at 278
S.W.3d 39.  A third opinion was issued on
January 22, 2009, again purporting to withdraw the opinion of January 31, 2008
and issuing a new opinion in its stead. 
The January 22, 2009 opinion appears at Poland v. Ott, No. 01-07-00199-CV, 2009
Tex. App. LEXIS 3766 (Tex.App.--Houston
[1st Dist.] Jan. 22, 2009, pet. denied).





[12]House
Comm. on Civil Practices, Tex. H.B. 2645, 78th Leg., R.S. (2005) and Sen. Comm.
on State Affairs, Tex. H.B. 2645, 78th Leg., R.S. (2005).





[13]We
express no opinion as to the sufficiency of the expert report.