

# NUMBER 13-11-00512-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI—EDINBURG

_____

MCALLEN HOSPITALS, L.P.
D/B/A MCALLEN MEDICAL CENTER,
IMPROPERLY NAMED AS MCALLEN MEDICAL CENTER          Appellant,

v.

EVELIA ONTIVEROS,                                                                    Appellee.

_____

On appeal from the 398th District Court
of Hidalgo County, Texas

_____

# MEMORANDUM OPINION

Before Justices Rodriguez, Benavides, and Perkes
Memorandum Opinion by Justice Perkes

Appellant, McAllen Hospitals, L.P. d/b/a McAllen Medical Center appeals[1] an interlocutory order denying its motion to dismiss filed pursuant to Texas Civil Practice and Remedies Code section 74.351(b), the Medical Liability Insurance Improvement Act ("MLIIA"). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (West 2011). By one issue, McAllen Medical Center argues that the trial court abused its discretion in denying its motion to dismiss when appellee, Evelia Ontiveros, failed to serve McAllen Medical Center with a timely expert report containing a physician's opinion on the issue of causation. *See id.* § 74.351(a), (r)(5)(C). We affirm the trial court's order denying McAllen Medical Center's motion to dismiss.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The undisputed facts in this case show the following. About five months into her pregnancy, Ontiveros's physician determined that her baby was stillborn and needed to be delivered. On June 17, 2009, Ontiveros was admitted to the McAllen Medical Center. On that same day, her stillborn fetus was delivered. While in the hospital, Ontiveros signed an authorization form "for disposition of products of conception," by which she instructed and authorized McAllen Medical Center to give the body of the stillborn fetus to a representative of Hernandez Funeral Home. On June 19, 2009, a representative of Hernandez Funeral Home arrived to pick up Ontiveros's stillborn fetus.

McAllen Medical Center, however, did not deliver the stillborn fetus to Hernandez Funeral Home. McAllen Medical Center's medical records for Ontiveros state that the "funeral home arrived; baby remains gone; accidently disposed of as tissue; family notified by Candida Constantine, CNO."

---

[1] This appeal was brought pursuant to Texas Civil Practice and Remedies Code section 51.014(a)(9). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(9) (West 2008).

Ontiveros filed this lawsuit to recover damages allegedly caused by McAllen Medical Center's negligence in mishandling of a corpse by failure to deliver the stillborn fetus to the funeral home, as directed. Ontiveros's attorney sent McAllen Medical Center's attorney an expert report by Registered Nurse Sally Gaines, accompanied by a letter explaining that Ontiveros's case was not a health care liability claim, but that she was submitting an expert report out of an abundance of caution.

McAllen Medical Center filed a motion to dismiss, challenging the adequacy of Nurse Gaines's expert report on the basis that Nurse Gaines was statutorily disqualified from rendering an expert opinion on causation. Ontiveros did not respond to McAllen Medical Center's motion to dismiss but did file a motion for partial summary judgment, seeking a ruling that her claim is not a health care liability case. The trial court denied McAllen Medical Center's and Ontiveros's motions. McAllen Medical Center filed this interlocutory appeal of the trial court's order denying its motion to dismiss. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(9) (West 2008).

## II. STANDARD OF REVIEW

Generally, we review a trial court's denial of a motion to dismiss under chapter 74 of the Texas Civil Practice and Remedies Code for abuse of discretion. *See Am. Transitional Care Ctrs. of Tex. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001). A trial court abuses its direction when it acts in an arbitrary or unreasonable manner or without reference to any guiding rules and principles. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985); *Padre Behavioral Health Sys., LLC v. Chaney*, 310 S.W.3d 78, 80–81 (Tex. App.—Corpus Christi 2010, no pet.). However, to the extent the issue on appeal raises a question of law, such as whether the statute

3

applies to a particular claim, we employ a de novo standard of review. *See Tex. W. Oaks Hosp.*, *L.P. v. Williams*, No. 10-0603, 2012 WL 2476807, at *3 (Tex. June 29, 2012); *Chaney*, 310 S.W.3d at 81.

### III. DISCUSSION

Ontiveros argues that she was not required to comply with the section 74.351 expert report requirement because her claim is not a health care liability claim. Ontiveros maintains that her claim was for negligent mishandling of a corpse by failure to deliver the stillborn fetus to the funeral home and that her fetus was not a patient, thus bringing her suit outside the scope of the MLIIA. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 74.001–.507 (West 2011).

### A. Ontiveros's Motion for Partial Summary Judgment

Citing Texas Rule of Appellate Procedure 25.1(c), McAllen Medical Center argues that this Court should not reach the threshold question of whether Ontiveros's suit is a health care liability claim because the trial court denied Ontiveros's motion for partial summary judgment that the claim is not a health care liability claim and because Ontiveros did not file a cross notice of appeal raising the issue in this Court. Texas Rule of Appellate Procedure 25.1 (c) provides as follows:

> (c) *Who Must File Notice.* A party who seeks to alter the trial court's judgment or other appealable order must file a notice of appeal. Parties whose interests are aligned may file a joint notice of appeal. The appellate court may not grant a party who does not file a notice of appeal more favorable relief than did the trial court except for just cause.

TEX. R. APP. P. 25.1(c).

On its face, Rule 25.1 (c) does not require Ontiveros to file a notice of appeal, because she was not seeking to alter the trial court's order denying McAllen Medical

4

Center's motion to dismiss, which is the subject of this appeal. In addition, the trial court's ruling on Ontiveros's motion for partial summary judgment was interlocutory and subject to reconsideration. *See Clark v. Strayhorn*, 184 S.W.3d 906, 909 (Tex. App.—Austin, 2006, pet. denied). An interlocutory order is unappealable unless a statute authorizes an interlocutory appeal. *See Bally Total Fitness Corp. v. Jackson*, 53 S.W.3d 352, 352 (Tex. 2001); *see also de Laurentis v. United Servs. Auto. Ass'n*, 162 S.W.3d 714, 719 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (citing *CU Lloyd's of Tex. v. Feldman,* 977 S.W.2d 568, 569 (Tex.1998)).

## B.  Failure to Deliver Stillborn Fetus to the Funeral Home

Under the facts presented in this case, to decide the issue presented on appeal we must first address the threshold question of whether Ontiveros's claim is a health care liability claim. *See Valley Baptist Med. Center v. Azua*, 198 S.W.3d 810, 813 (Tex. App.—Corpus Christi 2006, no pet.); *see also Hunsacker v. Fustok*, 238 S.W.3d 421, 425–26 (Tex. App.—Houston [1st Dist.] 2007, no pet.). A claimant who files a health care liability claim must serve an expert report on each party or his counsel not later than the 120th day after the claimant's original petition was filed. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (West 2011). If the claimant fails to do so, the trial court must dismiss the health care liability claim on the defendant's motion. *Id.* § 74.351(b). Whether a claim is a health care liability claim depends on the underlying nature of the claim being made. *Yamada v. Friend*, 335 S.W.3d 192, 196 (Tex. 2010). Chapter 74 defines a health care liability claim as:

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety ***or professional or administrative***

5

***services directly related to health care***, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13) (emphasis added).

"Professional or administrative services," as that phrase is used in the MLIIA, are "those duties or services that a physician or health care provider is required to provide as a condition of maintaining the physician's or health care provider's license, accreditation status, or certification to participate in state or federal health care programs." *Id.* § 74.001(a)(24).

The crux of Ontiveros's allegation is that McAllen Medical Center's failure to deliver her stillborn fetus's body to Hernandez Funeral Home despite her instructions amounted to negligent mishandling of a corpse and intentional infliction of emotional distress. Although McAllen Medical Center argues in its reply brief that Ontiveros's claim is one for "professional or administrative services directly related to health care," even construing its briefing liberally, McAllen Medical Center cites no legal authority for the proposition that failure to deliver a stillborn fetus's body to a funeral home comes within the definition of "professional or administrative services."

The question of whether Ontiveros's claim implicates duties or services that McAllen Medical Center was required to provide as a condition of maintaining its license, accreditation status, or certification to participate in state or federal health care programs is one that requires detailed statutory analysis. *See id.* § 74.001(a)(24); *see also CHCA Bayshore, L.P. v. Ramos*, No. 01-11-00764-CV, 2012 WL 3024426, at *3 (Tex. App.—Houston [1st Dist.] July 19, 2012, no pet. h.) (analyzing whether proper handling, identification, monitoring, and disposition of a specimen from a miscarriage

6

implicated "professional or administrative services" under section 74.001(a)(24)). Accordingly, we conclude McAllen Medical Center has waived this argument by not citing legal authority and related analysis in support of its position that Ontiveros's claim is a health care liability claim. *See* TEX. R. APP. P. 38.1(i); *Goodenberger v. Ellis*, 343 S.W.3d 536, 539–40 (Tex. App.—Dallas 2011, pet. denied).

We are aware that the First Court of Appeals recently touched on the question of whether the failure to deliver the products of a miscarriage to a funeral home is a "professional or administrative service" directly related to health care. *See CHCA Bayshore*, 2012 WL 3024426, at *3 (citing 25 TEX. ADMIN. CODE ANN. § 1.33 (a)(2)(F) (2012) and §§ 1.131–1.32(40)). In *CHCA Bayshore*, the crux of the plaintiffs' allegations was that the hospital failed to properly handle, identify, monitor, and dispose of a specimen resulting from a miscarriage. *Id.* at *2. The facts of the case were that the mother suffered a miscarriage at approximately twelve weeks into her pregnancy and after sending the resulting specimen to its pathology department for testing, the hospital erroneously delivered the amputated toe of another patient to the funeral home for burial. *Id.* at *1. After a funeral, the buried specimen was exhumed and discovered to be the incorrect specimen. *Id.*

The First Court of Appeals concluded that "the identification, handling, and ultimate disposal of specimens are services that a health care provider is required to provide as a condition of maintaining its license." *Id.* at *3. However, the court also noted that the statutes pertaining to the disposition of medical waste specifically exempt a hospital's transfer of fetal remains to a funeral home from the general requirements for handling and disposition of fetuses and tissues. *See id.* (citing 25 TEX. ADMIN. CODE

7

ANN. § 1.33 (a)(2)(F) (2012)). The statutory exemption for transfer of fetal remains to a funeral home reads as follows:

**1.133. Scope, Covering Exemptions and Minimum Parametric Standards for Waste Treatment Technologies Previously Approved by the Texas Department of Health**

(a) Exemptions.

(1) Unless an item is specifically exempted, all special waste from health-care related facilities must be treated as provided in these sections.

(2) These sections do not apply to:
. . .

(F) disposition of fetal remains of a single pregnancy, body parts, or tissue (including bulk blood), transferred for disposition to a licensed funeral director in accordance with the Health and Safety Code, Chapter 711, and Chapter 181 of this title (relating to Vital Statistics) with the consent of the person or persons authorized to consent to the disposition of the fetal remains, body parts, or tissue (including bulk blood). All subcategories of pathological waste, unless otherwise exempted, must be treated and disposed of in accordance with § 1.136 of this title (relating to Approved Methods of Treatment and Disposition).

25 TEX. ADMIN. CODE ANN. § 1.33 (a)(2)(F) (2012).

Interpreting this language, the First Court of Appeals did not find the duty to deliver the products of a single miscarriage to a funeral home in accordance with the parent's instruction to be a licensing, accreditation, or certification requirement for a hospital under Civil Practice and Remedies Code section 74.001 (a)(24). *See CHCA Bayshore*, 2012 WL 3024426, at *3. Thus, the duty to deliver the products of a single miscarriage to a funeral home would not itself be a "professional or administrative service" directly related to health care so as to fall within the scope of the MLIIA. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(24). Unlike *CHCA Bayshore*, the crux of

8

Ontiveros's claim falls within the scope of the exemption for transfer to a funeral home because it concerns the failure to deliver the remains of her stillborn fetus to Hernandez Funeral Home, and not the failure to properly handle, identify, monitor, and dispose of a specimen. *See CHCA Bayshore*, 2012 WL 3024426, at *3.

McAllen Medical Center also argues that this Court's ruling in *Angeles v. Brownsville Valley Regional Medical Center, Inc.* compels the conclusion that Ontiveros's claim is a medical malpractice claim. *See* 960 S.W.2d 854, 865 (Tex. App.—Corpus Christi 1997, pet. denied). We disagree because *Angeles* is not on point. In *Angeles*, the plaintiffs sued the hospital alleging that about three months after they were promised their stillborn fetus would be respectfully disposed of, they learned that no one had disposed of the fetus and that it was preserved in a plastic-type container at the hospital. *Id.* The plaintiffs sued on various theories, including breach of the Deceptive Trade Practices Act, breach of contract, intentional infliction of emotional distress, and general negligence. *Id.* at 857.

This Court held that the trial court did not abuse its discretion in allowing nurse and physician expert testimony on whether any applicable standards of care for handling a stillborn fetus were met, even though the plaintiffs argued their case was not one for medical malpractice. *Id.* at 864–65. In *Angeles*, this Court did not rule on the question of whether the plaintiffs presented a malpractice claim. *See id.* at 865. And unlike the plaintiffs in *Angeles*, Ontiveros's claim is for failure to deliver her stillborn fetus to a funeral home, not for improper storage. We are not convinced by *Angeles* that Ontiveros's claim is one for which expert medical testimony is required. *See id.* We overrule McAllen Medical Center's sole issue on appeal.

9

## IV. CONCLUSION

We affirm the trial court's order denying McAllen Medical Center's Motion to Dismiss under Civil Practice and Remedies Code section 74.351(b).

_____
Gregory T. Perkes
Justice

Delivered and filed the
30th day of August, 2012.